MEMORANDUM ENDORSEMENT

<u>Carroll v. The Republic of France, et al.</u>, 16 cv 2683 (NSR)

The Court is in possession of the attached pre-motion letter from Defendants, dated September 27, 2018, and Plaintiff's response letter, dated October 5, 2018. The Court waives the pre-motion conference requirement and grants Defendants leave to file their motion to dismiss with the following briefing schedule: moving papers shall be served **not filed** November 30, 2018; opposition shall be served **not filed** January 7, 2019; and reply shall be served January 22, 2019. **All motion documents shall be filed on the reply date, January 22, 2019.** The parties shall provide 2 copies of their respective motion documents to chambers on the dates the documents are served upon their adversary.

                    Dated:   October 22, 2018
                            White Plains, NY

                    SO ORDERED

                    Nelson S. Román, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/22/2018

Joseph P. Goldberg
Direct Dial: 646.218.7615
jgoldber@hodgsonruss.com

# HodgsonRuss LLP
ATTORNEYS

September 27, 2018

*[Handwritten: Opposing party to state position in writing (not to exceed 3 pages) by Oct. 5, 2018. Dated: Oct. 2, 2018*
**SO ORDERED:**
*[signature]*
HON. NELSON S. ROMÁN
UNITED STATES DISTRICT JUDGE]*

Via Fax
Hon. Nelson S. Román
United States District Judge
United States Courthouse
300 Quarropas Street, Courtroom 218
White Plains, NY 10601

Re: **Carroll v. The Republic Of France et al., No. 7:16-cv-02683 (NSR)**

Dear Judge Román:

Consistent with Your Honor's Individual Practices In Civil Cases 3(ii), I write on behalf of the Defendants to request a pre-motion conference in advance of filing a motion to dismiss the Plaintiff's complaint on three separate and independent grounds: 1) the Court may not exercise jurisdiction over any of the Defendants because they are foreign sovereigns and no exceptions to the Foreign Sovereign Immunities Act ("FSIA") apply; 2) if the Court finds that it has jurisdiction, it should nonetheless dismiss the case on grounds of *forum non conveniens* because, among other reasons, almost all of the critical evidence is in French and most of the necessary witnesses are also located in France; and 3) in the alternative, the Complaint should be dismissed as plaintiff cannot sustain her breach of contract action given her reliance on a provisional recommendation for grant aid which expressly states that it is conditional and subject to a two step approval process before becoming final.

## Background

Plaintiff's complaint invites the Court to adjudicate and nullify the results of a French presidential election. Specifically, Plaintiff seeks to invalidate a policy decision made by the French government after a contested presidential election concerning the education of French students living abroad. Plaintiff seeks, via a class action, to require the French government to pay for the education of French students living abroad even though the French government (and French citizens) decided to formally end this program during the summer of 2012.

When Nicolas Sarkozy ran for the French presidency in 2007, one of his campaign promises was to institute free education for all French students living abroad, starting with the last year of secondary school. This program was called Prise en Charge ("assumption of cost"), or PEC. Families wishing to apply for PEC aid had to demonstrate that they were French citizens and that their schoolchildren were to be enrolled in schools accredited by the Agence pour l'Enseignement Francais a l'Etranger – in English, the Agency for French Education Abroad (the "Agency"). These familes submitted applications to local French consulates. The consulates evaluated the applications, issued preliminary recommendations, and notified applicants that the recommendations were subject to the final approval of the National Commission For Financial Aid and the Agency. The consulates then sent the applications to the Agency office in Paris for a final recommendation from the National Commission and the final decision to grant or deny aid.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/2/2018

605 Third Avenue • Suite 2300 • New York, New York 10158 • telephone 212.751.4300 • facsimile 212.751.0928
Albany • Buffalo • New York • Palm Beach • Saratoga Springs • Toronto • www.hodgsonruss.com

Hon. Nelson S. Román
September 27, 2018
Page - 2 –



PEC quickly became a large undertaking and became politically contentious in France, in part because of its growing expense. When Francois Hollande ran for the presidency against Nicolas Sarkozy in 2012, he advocated the termination of PEC. Hollande, during his campaign, indicated that he would replace the PEC program with a program that provided financial aid only to students with demonstrated financial need. Nicolas Sarkozy, in his campaign, stated that, if elected, he would keep the PEC program in place.

During the election year, the Agency continued to administer the policies set by the Sarkozy administration and the French foreign ministry. Local consulates accepted applications and made initial recommendations to the Agency. The Agency did not make any final decisions to grant or deny PEC aide before the presidential election and the complaint does not allege otherwise. The election was held in May 2012. Francois Hollande won the presidency. His administration quickly moved to fulfill his campaign promises. In July and August of 2012, the Presidential administration, the Prime Minister, the heads of France's ministries, the foreign ministry, and the Agency all took action to end the PEC program.

### The Complaint

The complaint asserts a single cause of action for breach of contract. Plaintiff, a French citizen living in the United States, alleges that she applied for grant aid to cover tuition for her daughter for the school year 2012/2013. The letter upon which plaintiff relies as quoted in the complaint reads in pertinent part, "I draw your attention to the fact that this proposal is made on behalf of the Local Commission For Financial Aid of NEW YORK, *subject to the final decision of the AEFE, after a final recommendation of the National Commission For Financial Aid*. Any decision not in accordance with this proposal will be immediately notified." Complaint ¶ 20 (emphasis added). Substantially similar letters were sent to other PEC applicants. Although the letter is, by its express terms, conditional, Plaintiff asserts, on behalf of herself and all others similarly situated, that the termination of the PEC program constituted a breach of contract to provide PEC grant aid.

### The Court May Not Exercise Jurisdiction Over Defendants

It is undisputed that each defendant – the Republic of France, its foreign ministry, and the agency that implements educational policies created by the foreign ministry – are "foreign states" as defined by 28 USC § 1603(1) and thus presumptively immune from jurisdiction of U.S. courts unless an exception to the FSIA applies. Complaint ¶¶ 11-13. The Complaint alleges that Defendants are not immune from suit pursuant to the commercial activities exception. This allegation has no basis in fact or law.

In order to create an exception to FSIA's presumption that jurisdiction does not exist over foreign sovereignties for commercial activity, the Court evaluates "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Figueroa v. Ministry for Foreign Affairs of Sweden*, 222 F.Supp.3d 304, 310-311 (S.D.N.Y. 2016). Courts consistently hold that the administration of large-scale policies such as PEC do not constitute commercial activity. *See, e.g., Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171 (2d Cir. 2010) (holding administration of large state-run health insurance program fundamentally different than private market provision of health insurance). The "commercial activity" identified by Plaintiff is a large-scale French educational program, and the alleged breach on

Hon. Nelson S. Román
September 27, 2018
Page - 3 —



parties, and is precisely the sort of sovereign decision-making that is meant to be immune from jurisdiction under the FSIA.

### Alternatively, The Court Should Dismiss The Case Under The Doctrine Of Forum Non Conveniens

Plaintiff's claims are, fundamentally, a dispute between citizens of France and the French government. Even if the Court determines that it has jurisdiction, the conveniences of the parties and public considerations indicate that the action should be dismissed as filed in an inconvenient forum. *See, e.g., Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004). While Plaintiff's choice of forum is entitled to some deference, France provides an adequate alternative forum and virtually every document likely to be relevant to the case is in the French language, most likely witnesses are French-speakers located in France, all members of the proposed class in the complaint will be citizens of France, and France has a very strong interest in resolution of disputes over its educational policies set at the presidential level.

### Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43 (1st Dep't 2009) (internal citations and quotations omitted). The complaint relies entirely on a letter that is expressly conditional and requires final approval from both the National Commission and the Agency. Complaint ¶ 20. The complaint alleges that final approval was denied. Complaint ¶ 24. In other words, the plain text of the complaint demonstrates that Plaintiff received notification that her proposed aid award was provisional and subject to an additional two step approval process, and that the approval process resulted in denial of the proposed aid award. On its face, the complaint establishes that there was not an offer, acceptance, or a mutual intent to be bound. Finally, the complaint clearly alleges that PEC was a grant program designed to provide "free" education to French citizens living abroad. Complaint ¶ 17. PEC provided grant money without obliging recipients to repay or perform any services. The complaint conspicuously fails to allege that Plaintiff offered any consideration in exchange for a provisional PEC grant. Gifts without consideration do not create an enforceable contract. *See, e.g., Muckle v. UNCF*, 930 F.Supp.2d 1355, 1359 (N.D.Ga., 2012) (dismissing breach of contract claim based on scholarship contract, holding scholarship was gift where applicant offered no consideration).

Very truly yours,

Joseph P. Goldberg

cc:   Robert Berg, Esq. (via email and mail)
      Jeff Carton, Esq. (via email and mail)

Joseph P. Goldberg
605 Third Ave., Suite 2300
New York, NY 10158
Telephone: 646-218-7615
Facsimile: 646-943-7070



*A Registered Limited Liability Partnership Including Professional Associations*

Please deliver the following pages to:

**Name:**           Hon. Nelson S. Roman

**Phone Number:**

**Company:**        United States District Judge

**Facsimile:**      914-390-4179

**From:**           Joseph P. Goldberg     **Direct Telephone:**   646-218-7615

**Total Pages:**    (does not include cover page)  03

**Today's Date:**   Thursday, September 27, 2018 1:29:34 PM

**Comments:**

Re: Carroll v. The Republic of France, et al., No. 7:16-cv-02683 (NSR)

**Confidentiality Notice**
This is a CONFIDENTIAL transmission. The sender, Hodgson Russ LLP, is a law firm representing its client. The transmission is intended for the designated addressee only. If you are not the intended recipient, please contact us immediately and REFRAIN FROM DISCLOSING OR USING THE ENCLOSED INFORMATION IN ANY WAY. Failure to comply with this direction may result in a claim that you have violated the law and/or are liable for money damages.

Thank you for your attention to this message. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.
Telephone: 646-218-7615



**DENLEA &
CARTON LLP**

October 5, 2018

2 Westchester Park Drive
Suite 410
White Plains, NY 10604
Tel 914-331-0100
Fax 914 331 0105
www.denleacarton.com

**By Facsimile**
Hon. Nelson S. Román
United States District Court
300 Quarropas Street
White Plains, New York 10601

                       Re:    **Carroll v. The Republic of France, et al.
                                  Case No. 7:16-cv-02683 (NSR) (S.D.N.Y.)**

Dear Judge Román:

      We represent Plaintiff Martine Carroll in the above-referenced class action. We write in response to the letter request of Defendants, dated September 27, 2018, for a pre-motion conference to address Defendants' proposed motion to dismiss the Complaint. While we do not oppose Defendants' request for a pre-motion conference, we welcome the opportunity to explain to the Court why such a motion would represent an exercise in futility.

## Background

      This is a putative class action for breach of contract. In 2007, the Republic of France implemented a tuition grant program designed to encourage children of its expatriate citizens to attend French-government accredited schools while living abroad. Complaint, ¶17. The tuition grants, called "PEC" grants, were awarded to approximately 8,000 French high school students each year, including plaintiff's daughter, Belle, who was a student at the French-American School of New York, located in Mamaroneck, New York. Complaint, ¶¶16, 18. Plaintiff is a French citizen who resides in the United States. Complaint, ¶6. Defendants are the Republic of France, a foreign state, Complaint, ¶7; the French Ministry of Foreign Affairs, an official ministry of the French State, Complaint, ¶8; and L'Agence pour L'Enseignement Francais a L'Etranger ("AEFE"), known in English as the Agency for French Education Abroad, a French government institution supervised by the French Ministry of Foreign Affairs. Complaint, ¶9.

      Plaintiff applied for a PEC tuition grant for the academic year 2012/2013. On or about April 20, 2012, the French Consul General sent Plaintiff a letter informing her that her daughter Belle had been approved for the PEC award in the amount of $25,820. The award represented the full amount of tuition at the French-American School of New York. Complaint, ¶¶19, 20. In the United States, at least, the accredited French curriculum schools are all independent, private schools which charge high tuition ranging up to $31,000 per student per year, depending on grade level and school location. Complaint, ¶15. Families, therefore, needed to know in the Spring whether or not they would be receiving the PEC tuition grants for the following academic year – and they had to rely upon that April 20, 2012 notification letter – before they enrolled their children and entered into binding contracts with their schools. Complaint, ¶3. Thus, shortly after Plaintiff received the PEC grant award letter, she and her husband enrolled Belle for the 2012/2013 academic year. Complaint, ¶21. So too did many hundreds of similarly situated class members. Complaint, ¶22. At this point, Plaintiff and the other class members were contractually bound to pay the substantial tuition to their French high schools for the 2012/2013 academic year. On or about July 5, 2012, Plaintiff and the

other class members received the shocking news, by letter, that their previously awarded PEC tuition grants for the 2012/2013 academic year were being cancelled in conjunction with the termination of the PEC program. Complaint, ¶¶23-25. Defendants' unilateral termination of the PEC program just before the start of the 2012/2013 academic year constitutes a breach of their contracts with Plaintiff and the other class members to provide them with PEC tuition grants for that year, and caused them to bear unexpected and substantial tuition expenses at the French high schools where they had already enrolled their children. Complaint, ¶¶5, 26, 27.

### This Court Has Jurisdiction Over Defendants

Defendants are a sovereign foreign State, an official ministry, and a French government institution supervised by the ministry. As such, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§1330, 1330(a)(2), and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1602. While sovereigns and their instrumentalities are generally immune from the jurisdiction of U.S. courts, the FSIA contains statutory exceptions. Relevant here is Section 1605(a)(2), the "commercial activity" exception, "in which the action is based upon a commercial activity carried on in the United States by the foreign state." Plaintiff will demonstrate that the granting of the PEC awards to pay the tuition for Plaintiff's daughter and the tuitions of hundreds of other expatriate high school students to private, independent French government-accredited high schools in the United States, among other activities engaged in by Defendants in connection with these schools, constitutes commercial activity in the United States, regardless of the French government's motive for the program. The commercial character of an activity "shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. §1603(d). The PEC awards are used to pay tuition. The tuition remitted to the U.S. high schools pays for teacher, administrator, and staff salaries and benefits; school supplies and equipment; building operating expenses, repair, and maintenance; and programming — all commercial activity. Moreover, Defendant AEFE and its affiliate, the Mission Laïque Française, are involved in operating certain of the schools and training or supervising their teachers and staff in the U.S., in whole or part, for which services they are paid by the schools. Additionally, the French government maintains a royalty scheme whereby all French government-accredited schools around the world, including U.S. based schools, pay yearly royalties to AEFE based upon tuition revenues. Defendants thereby fully engage in commercial activity in the U.S. in connection with the French government-accredited schools, and in particular, with the PEC grants.

### Plaintiff's Choice Of Forum In This Court Is Appropriate

*Forum non conveniens* is "a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2nd Cir. 2004). The court (1) "determines the degree of deference properly accorded the plaintiff's choice of forum;" (2) "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute;" and (3) "balances the private and public interests implicated in the choice of forum." *Nores Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2nd Cir. 2005). While this dispute involves French citizens and the French government, the citizens are all legal residents of the United States whose children attended private independent high schools located in the United States. Plaintiff's and the class members' relationship with the United States are close, continuing, and longstanding. In reliance on the PEC grant awards, they enrolled their children in and signed contracts with U.S. high schools to pay tuition for the 2012/2013 academic year. Virtually all the class members and their children are or were located in the United States. All the documents relating to the enrollment of their children at their respective U.S. high schools, their tuition payments, and any damages resulting from Defendants' revocation of their PEC awards are located within the

2

United States. So too are the staff and administrators of the French government-accredited high schools who can testify about the commercial activities between the French government entities and their schools, the tuition programs and enrollment of French nationals at their schools, and the disruption and monetary damages caused to class members by the sudden revocation of the PEC awards in July 2012 after the enrollment period and contract signing had ended. In contrast, only a limited number of France-based witnesses need testify about the PEC program itself and its cancellation. Their depositions can be taken in France, with translators. The small universe of France-based relevant documents can be sent to the United States and translated at Plaintiff's expense.

More importantly, no equivalent forum exists in France to hear Plaintiff's claims. First, under the French Code of Administrative Justice (the "Code"), under which a claim for monetary damages would have to be made, the statute of limitations is only 4 months. That claim would have been extinguished by November 2012, nearly six years ago. Moreover, this action could not be prosecuted as a contingency fee class action in France where such arrangements are strictly prohibited. In France, the class action mechanism is severely proscribed and could only be brought by one of 17 approved national consumer organizations on an opt-in basis; there is no guarantee that such an organization would step forward to bring this action at its own expense. No pretrial discovery or jury trial is available in French judicial proceedings either. Plaintiff's choice of forum in the United States is appropriate, the best and indeed only real alternative, and should be given great deference.

### The Complaint States An Actionable Claim For Breach Of Contract

Defendants mischaracterize the nature of the enforceable agreement at issue. The contract is a unilateral contract. Defendants made an offer by sending the PEC grant award letter on or about April 12, 2012. Plaintiff (and the other class members) accepted the offer by enrolling Belle and their children in the French government-accredited high schools. *See, e.g., Volunteers of Am. of W.N.Y., Inc. v. Rochester Gas & Elec. Corp.*, 2014 WL 3510495 (W.D.N.Y. Jul. 14, 2014) (elements of unilateral contract under New York Law). Their consideration was the enrollment and contractual liability they incurred to those schools for the tuition due for the 2012/2013 academic year. Defendants were actively promoting the PEC grants and the French government – accredited high schools for their expatriates, and they were well aware that Plaintiff and the other class members were relying on the promised PEC awards when they enrolled their children in approved programs offering a French education. Defendants are liable for monetary damages, and in the alternative, should be estopped from denying their breach. *Kaye v. Grossman*, 202 F.3d 611, 615 (2nd Cir. 2000) (To demonstrate promissory estoppel under New York Law, a party must show reasonable and detrimental reliance upon a clear and unambiguous promise).

\*   \*   \*

We have little doubt that when Your Honor scrutinizes the instant Complaint, Your Honor will conclude that Defendants' motion to dismiss should be denied. We look forward to discussing this matter with Your Honor at the Court's earliest convenience.

Respectfully submitted,

Jeffrey A. Carton

cc: Joseph P. Goldberg, Esq. (By facsimile and by mail)

# DENLEA & CARTON LLP
2 WESTCHESTER PARK DRIVE, SUITE 410
WHITE PLAINS, NEW YORK 10604
TEL: (914) 331-0100
FAX: (914) 331-0105

# FAX COVER SHEET

TO:       HON. NELSON S. ROMAN
          UNITED STATES DISTRICT COURT

FAX #:    (914) 390-4179

FROM:     JEFFREY I. CARTON, ESQ.

Re:       Carroll v. The Republic of France, et al.
          Case No. 7:16-cv-02683 (NSR) (S.D.N.Y.)

DATE:     October 5, 2018

                                     Pages - ( 4 ) including transmittal

COMMENTS:
    SEE ATTACHED